**ORIGINAL**

1  THOMAS L. SANSONETTI
   Assistant Attorney General
2  Environment and Natural Resources Division

3  LILY N. CHINN (State Bar No. 203173)
   ANDREW J. DOYLE
4  PAUL D. TANAKA
   Environment and Natural Resources Division
5  United States Department of Justice
   P.O. Box 23986
6  Washington, D.C.  20026-3986
   Telephone: (202) 514-0135 (Chinn)
7            (202) 514-4427 (Doyle)
             (202) 514-0995 (Tanaka)
8  Fax: (202) 514-8865

9  DEBRA W. YANG
   United States Attorney
10 Central District of California

11 LEON W. WEIDMAN
   Chief, Civil Division
12
   SUZETTE CLOVER (State Bar No. 89066)
13 Assistant United States Attorney
   300 North Los Angeles Street
14 Los Angeles, California  90012
   Telephone: (213) 894-2442
15 Fax: (213) 894-7819

16 Attorneys for the United States

17            UNITED STATES DISTRICT COURT

18        FOR THE CENTRAL DISTRICT OF CALIFORNIA

19 ─────────────────────────────

20 UNITED STATES OF AMERICA,            ) No. 00-cv-7409 CAS (RNBx)
                                        ) Hon. Christina A. Snyder
21            Plaintiff,                )
                                        )
22                                      )
        v.                              ) CONSENT DECREE
23                                      )
                                        )
24                                      )
   ADAM BROS. FARMING, INC.,            )
25 ICEBERG HOLDINGS, L.P.,              )
   RICHARD ADAM, PETER ADAM,            )
26 KIERAN ADAM, and DOMINIC ADAM,       )
                                        )
27            Defendants.               )
                                        )
28 ─────────────────────────────



Priority ✓
Send ✓
Clsd
Enter ✓
Δ/Ϙ JS-5/JS-6
── JS-2/JS-3

LODGED
CLERK, U.S. DISTRICT COURT
·ⱭꞐ 2 5 2005
CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

LODGED
CLERK, U.S. DISTRICT COURT
FEB 2 5 2005
CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

FILED
CLERK, U.S. DISTRICT COURT
APR 7 2005
CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

ENTERED
CLERK, U.S. DISTRICT COURT
APR 8 2005
CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY F.R.C.P. RULE 77(d)

456

## CONSENT DECREE

WHEREAS, Plaintiff, the United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), filed the Complaint herein against Defendants Adam-Bros. Farming, Inc., Iceberg Holdings, L.P., Richard Adam, Peter Adam, Kieran Adam, and Dominic Adam (collectively, "Defendants"), alleging that Defendants violated Sections 301(a) and 309 of the Clean Water Act ("CWA"), 33 U.S.C. §§ 1311(a) and 1319 respectively;

WHEREAS, the Complaint alleges that Defendants violated CWA Section 301(a) by discharging dredged or fill material and/or controlling and directing the discharge of dredged or fill material into Orcutt Creek and other "waters of the United States" on 79 acres of property (the "Disputed Area"), located within a 268-acre parcel located in Santa Barbara County, California (Santa Barbara County Assessor Parcel Numbers 111-240-05, 111-240-07, 111-240-20, and 111-240-24) (the "Site"), without authorization by the United States Army Corps of Engineers ("Corps of Engineers"), and that Defendants violated CWA Section 309 by failing to comply with an EPA administrative compliance order issued in 1999 requiring Defendants to take certain steps to remediate the environmental harm caused by their alleged unlawful discharges within the Disputed Area;

WHEREAS, the Complaint seeks (1) to enjoin the discharge of pollutants into waters of the United States in violation of CWA Section 301(a), 33 U.S.C. § 1311(a); (2) to require Defendants, at their own expense and at the direction of EPA, to restore and/or mitigate the alleged harm caused by their alleged unlawful activities; and (3) to require Defendants to pay civil penalties

-1-

1 | as provided in 33 U.S.C. § 1319(d);

2 |    WHEREAS, Defendants have each filed an Answer denying the

3 | allegations in the Complaint, including specifically that any of

4 | them violated the CWA or that the Site, including the Disputed

5 | Area, contained "waters of the United States" within the meaning

6 | of the CWA;

7 |    WHEREAS, this Consent Decree is intended to constitute a

8 | complete and final settlement of the United States' claims under

9 | the CWA that were or could have been asserted in the Complaint

10 | regarding the Site and the Disputed Area;

11 |    WHEREAS, the United States and Defendants agree that

12 | settlement of this case is in the public interest and that entry

13 | of this Consent Decree is the most appropriate means of resolving

14 | the United States' claims under the CWA against Defendants in

15 | this case; and

16 |    WHEREAS, the Court finds that this Consent Decree is a

17 | reasonable and fair settlement of the United States' claims

18 | against Defendants in this case, and that this Consent Decree

19 | adequately protects the public interest in accordance with the

20 | CWA and all other applicable federal law.

21 |    THEREFORE, before the taking of any testimony upon the

22 | pleadings, without further adjudication of any issue of fact or

23 | law, and without any admission of liability by Defendants,

24 | including, specifically, that there were any adjacent wetlands on

25 | the Site as alleged in the Complaint, and upon consent of the

26 | parties hereto by their authorized representatives, it is hereby

27 | ORDERED, ADJUDGED and DECREED as follows:

28 |

-2-

# I. JURISDICTION AND VENUE

1.   This Court has jurisdiction over the subject matter of this action and over the parties pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 309(b) of the CWA, 33 U.S.C. § 1319(b).

2.   Venue is proper in the Central District of California pursuant to CWA Section 309(b), 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1391(b) and (c), because the Defendants conduct business in this District, the subject property is located in this District, and the causes of action alleged herein arose in this District.

3.   The Complaint states claims upon which relief can be granted pursuant to Sections 301, 309 and 404 of the CWA, 33 U.S.C. §§ 1311, 1319 and 1344.

# II. APPLICABILITY

4.   The obligations of this Consent Decree shall apply to and be binding upon Defendants, their officers, directors, agents, employees and servants, and their successors and assigns, and any person, firm, association or corporation who is, or will be, acting in concert or participation with any of the Defendants whether or not such person has notice of this Consent Decree.   In any action to enforce this Consent Decree against a Defendant, the Defendant shall not raise as a defense the failure of any of its officers, directors, agents, employees, successors or assigns, or any person, firm or corporation acting in concert or participation with the Defendant, to take any actions necessary to comply with the provisions hereof.

5.   Except as expressly provided for in this paragraph, the

transfer of any interest in the Restoration and Preservation Area (as denoted in Appendix A hereto) shall not alter or relieve Defendants of their obligation to comply with all of the terms of this Consent Decree.  At least fifteen (15) days prior to the transfer of ownership or other interest in the Restoration and Preservation Area (or any parcel that includes any portion of the Restoration and Preservation Area), Defendant Iceberg Holdings, L.P. shall provide written notice and a true copy of this Consent Decree to the transferee and shall simultaneously notify EPA and the United States Department of Justice in writing, at the addresses specified in Section IX below, that such notice has been given.  As a condition to any such transfer, Defendant Iceberg Holdings, L.P. shall reserve all rights necessary to comply with the terms of this Consent Decree and shall require the transferee to include compliance with the terms of the Consent Decree as a condition in any subsequent deed or other legal instrument by which transferee divests itself of any interest in Santa Barbara County Assessor Parcel Numbers 111-240-05, 111-240-07, 111-240-20, and/or 111-240-24, to the extent the Restoration and Preservation Area is within such parcel.  Nothing in this provision shall be construed as giving Plaintiff, including any agency of the United States, the authority to approve or disapprove of any transfer.  Nothing in this Consent Decree shall prevent Defendant Iceberg Holdings, L.P. from obtaining appropriate commitments, including but not limited to indemnification agreements, from any transferee that would obligate transferee to comply with this Consent Decree or pay any costs or fines associated with this Consent Decree.

-4-

1  Notwithstanding the first sentence of this paragraph, in the

2  event of a transfer in ownership, the obligation to comply with

3  the Restoration and Preservation Plan (contained in Appendix A)

4  shall run with the land in perpetuity.

5  ### III. <u>SCOPE OF CONSENT DECREE</u>

6      6.  Upon entry of this Consent Decree:

7          A.  the cease and desist letter dated January 29,

8  1999 (Case No. 985036800-JEM) from the Corps of Engineers shall

9  be deemed withdrawn and have no further effect; and

10         B.  the Administrative Order dated August 5, 1999

11  from EPA shall be deemed withdrawn and have no further effect.

12     7.  This Consent Decree shall constitute a complete and

13  final settlement of all civil claims for injunctive relief and

14  penalties asserted in the Complaint or that could have been

15  asserted in the Complaint under the CWA based upon the facts

16  alleged in the Complaint as well as all administrative claims

17  that were or could have been brought under the CWA based on the

18  facts alleged in the complaint. .

19     8.  It is the express purpose of the parties in entering

20  this Consent Decree to further the objectives set forth in CWA

21  Section 101, 33 U.S.C. § 1251.  All obligations in this Consent

22  Decree or resulting from the activities required by this

23  Consent Decree shall have the objective of maintaining full

24  compliance with, and to further the purposes of, the CWA.  This

25  paragraph shall not be construed to expand the scope of any

26  specific obligations contained in this Consent Decree.

27     9.  Defendants' obligations under this Consent Decree are

28  as follows:

A.    With respect to payment of any monetary amounts for civil penalty and offsite mitigation, the obligations shall be joint and several as to all Defendants;

B.    With respect to compliance with the Restoration and Preservation Plan, the obligations shall be joint and several as to Adam Bros. Farming, Inc., Iceberg Holdings, L.P., Peter Adam, Dominic Adam and Kieran Adam;

C.    With respect to Stipulated Penalties described in Section VIII below, the obligation shall be joint and several based on Defendants' obligations as outlined in subparagraphs (A) and (B) of this paragraph;

D.    Any obligations imposed on "Defendants" in this Consent Decree and not specifically provided for in this paragraph shall be joint and several as to all Defendants.

10.   Except as in accordance with this Consent Decree, Defendants and Defendants' agents, successors and assigns are enjoined from discharging any pollutant into the Restoration and Preservation Area, unless such discharge complies with the provisions of the CWA, its implementing regulations, and the terms and conditions of the Restoration and Preservation Plan.

11.   The parties acknowledge that Nationwide Permit 32, found at 67 Fed. Reg. 2020, 2084 (Jan. 15, 2002), authorizes any fill that was placed on the Site as of the date of this Consent Decree to remain in place, subject to the conditions of that Nationwide Permit and this Consent Decree.  The parties further acknowledge that Nationwide Permit 32 authorizes the discharge of dredged or fill material pursuant to the terms of this Consent Decree, specifically including the Restoration and Preservation

Plan (Appendix A hereto) and Paragraphs 21 through 23 below, subject to the conditions of that Nationwide Permit and this Consent Decree. These acknowledgments are not and shall not be construed as an implicit or explicit admission by Defendants that, at any time, they discharged pollutants into waters of the United States in violation of the CWA.

12. This Consent Decree is not and shall not be interpreted to be a permit or modification of any existing permit issued pursuant to Sections 402 or 404 of the CWA, 33 U.S.C. §§ 1342 or 1344, or any other law.

13. This Consent Decree does not affect or relieve Defendants of any responsibility to comply with applicable federal, state, or local law, regulation or permit.

14. Except as provided in Paragraph 15 below, this Consent Decree in no way affects the rights of the United States as against any person not a party to this Consent Decree.

15. The United States reserves any and all legal and equitable remedies available to enforce the provisions of this Consent Decree. The United States shall have the right to enforce the obligations of the Preservation and Restoration Plan against subsequent owners of any portion of the Restoration and Preservation Area. This right shall survive termination of this Consent Decree and shall run with the land in perpetuity.

16. Nothing in this Consent Decree shall constitute an admission of fact or law by any party. Specifically, but without limitation, (a) the reference to any Nationwide Permit shall not be construed as an admission of any fact or law as to the nature of the activities undertaken on the Site or whether such

- 7 -

activities are or were subject to regulation under the CWA; and
(b) this Consent Decree does not constitute evidence of any
finding, agreement, admission or other basis to conclude that
there were "waters of the United States" on the Site at any time
within the meaning of the CWA as alleged in the Complaint.  The
parties further agree that this Consent Decree shall not be
admissible in any proceeding as evidence of the existence of
"waters of the United States" as alleged in the Complaint.

## IV. SPECIFIC PROVISIONS

## CIVIL PENALTIES

17.  Defendants shall pay a civil penalty to the United
States in the amount of Two Hundred Thousand Dollars ($200,000)
within sixty (60) days of entry of this Consent Decree.

18.  Defendants shall make the above-referenced payment by
FedWire Electronic Funds Transfer ("EFT" or wire transfer) to the
U.S. Department of Justice account in accordance with current
electronic funds transfer procedures, referencing U.S.A.O. file
number 2000V01872, EPA Region IX and the DOJ case number 90-5-1-
1-05744.  Payment shall be made in accordance with instructions
provided to the Defendants by the Financial Litigation Unit of
the United States Attorney's Office for the Central District of
California.  Any payments received by the Department of Justice
after 4:00 P.M. (Eastern Time) will be credited on the next
business day.

19.  Upon payment of the civil penalty required by
Paragraph 17 above, Defendants shall provide written notice to
EPA and the United States Department of Justice, at the addresses
specified in Section IX below, that such payment was made.

- 8 -

1    20.  Civil penalty payments pursuant to this Consent Decree

2  (including Stipulated Penalty payments under Section VIII below)

3  are penalties within the meaning of Section 162(f) of the

4  Internal Revenue Code, 26 U.S.C. § 162(f), or of 26 C.F.R.

5  § 1.162-21, and are not tax deductible expenditures for purposes

6  of federal law.

7              **RESTORATION, PRESERVATION, AND MITIGATION**

8    21.  Defendants have agreed to undertake certain restoration

9  and preservation activities on the Site, as well as provide

10  funding for mitigation activities off-site.  With respect to on-

11  site activities, Defendants shall comply with the terms of the

12  Restoration and Preservation Plan attached as Appendix A hereto

13  and incorporated herein by reference.  The Restoration and

14  Preservation Area identified in Exhibit 1 to Appendix A shall be

15  preserved in perpetuity, in accordance with the Restoration and

16  Preservation Plan.  The parties intend that the obligations in

17  this Paragraph shall run with the land in perpetuity.  In

18  furtherance of this intent, Defendant Iceberg Holdings, L.P.

19  shall, within fifteen (15) days of entry of this Consent Decree,

20  record a certified copy of this Consent Decree, including all

21  Appendices, for Santa Barbara County Assessor Parcel Numbers 111-

22  240-05, 111-240-07, 111-240-20, and 111-240-24 with the Recorder

23  of Deeds Office, in Santa Barbara County, California.

24  Thereafter, each deed, title, or other instrument conveying an

25  interest in the Restoration and Preservation Area identified in

26  Exhibit 1 to Appendix A shall contain a notice stating that the

27  parcel containing the Restoration and Preservation Area  is

28  subject to this Consent Decree, including all Appendices, and

1  shall reference the recorded location of the Consent Decree and

2  any restrictions applicable to  such parcel  under this Consent

3  Decree, provided, however, that none of the Defendants shall be

4  obligated to take any action to enforce this obligation against

5  subsequent transferees' transfer of any parcel containing any

6  portion of the Restoration and Preservation Area, nor shall

7  Defendants be liable if such subsequent transferees fail to

8  include the notice of such transfer, unless such transferee is a

9  signatory to this Consent Decree.

10      22.  Within thirty (30) days of entry of this Consent

11  Decree, Defendants shall pay two hundred thousand dollars

12  ($200,000.00) to the Land Conservancy of San Luis Obispo County

13  for the purposes of carrying out the first phase of the off-site

14  mitigation identified in Appendix B hereto.   No later than

15  December 1, 2005, Defendants shall pay an additional seven

16  hundred and fifteen thousand dollars ($715,000) to the Land

17  Conservancy of San Luis Obispo County for the purposes of

18  carrying out the second phase of the off-site mitigation

19  identified in Appendix B hereto.  Upon each such payment,

20  Defendants shall notify EPA and the United States Department of

21  Justice in writing, at the addresses specified in Section IX

22  below, that such payment was made in accordance with this

23  paragraph. All payments made under this paragraph are made as

24  part of the injunctive relief under Section 309(b) of the CWA,

25  for the compensatory purpose of off-site mitigation and

26  remediation, and are not being made in lieu of a civil penalty or

27  in settlement of Defendants' actual or potential liability for

28  any civil or criminal penalty under the CWA or otherwise,

1  pursuant to a supplemental Environmental Project, or as a penal

2  sanction.

3      23.  In consideration of the environmental benefits of the

4  restoration, preservation and mitigation provisions of Paragraphs

5  21 and 22 above, and to resolve without further litigation the

6  dispute between the parties regarding whether the Site contains

7  "waters of the United States":

8      A.  Defendants may, during the life of this Consent

9  Decree, pursuant to Nationwide Permit 32, and without any

10 additional general or individual permit:

11          1.  undertake any and all activities on the Site

12      outside the Restoration and Preservation Area that are

13      appropriate to prepare, maintain, and operate the Site for

14      farming and production of food or other crops.  These

15      activities may include land leveling, grading, filling, the

16      installation and operation of surface water and/or tile

17      drains, plowing, seeding, cultivating, minor drainage, and

18      harvesting.  Nothing in this paragraph is intended to

19      prohibit Defendants, after the termination of the Consent

20      Decree, from engaging in further preparation and maintenance

21      activities to improve farming operations on the Site outside

22      the Restoration and Preservation Area in accordance with the

23      CWA.

24          2.  replace any portion of the channel (described

25      by the parties during this litigation as part of the South

26      Channel or Tributary 1) that is not surveyed on Exhibit 1 to

27      Appendix A but that is located east of points 253/285 on

28      Exhibit 1, with an underground drainage pipe for irrigation

1    return flow, provided that such pipe is covered with soil;

2    and

3         B.    Following termination of this Consent Decree, then

4    on-going farming activities may continue outside the Restoration

5    and Preservation Area, subject to CWA Section 404(f), 33 U.S.C.

6    § 1344(f), and 33 C.F.R. § 323.4.  This provision shall not be

7    construed as placing any limitation on activities on the Site

8    that are not otherwise subject to the CWA.

9                **V. RETENTION OF RECORDS AND RIGHT OF ENTRY**

10        24.   Until five years after termination of this Consent

11   Decree, Defendants shall preserve and retain all records and

12   documents now in their possession or control or which come into

13   their possession or control that document compliance with the

14   provisions of Appendix A, regardless of any corporate retention

15   policy to the contrary.  Defendants shall also instruct their

16   contractors and agents to preserve all documents, records, and

17   information of whatever kind, nature or description relating to

18   the provisions of Appendix A until five years after termination

19   of this Consent Decree.

20        25.   At the conclusion of the document retention period,

21   Defendants shall notify EPA and the United States Department of

22   Justice in writing, at the addresses specified in Section IX

23   below, at least ninety (90) days prior to the destruction of any

24   such records or documents, and, upon request by the United

25   States, Defendants shall deliver any such records or documents to

26   EPA.   The Defendants may assert that certain documents, records

27   and other information are privileged under the attorney-client

28   privilege or any other privilege recognized by federal or state

                              - 12 -

1   law.  If the Defendants assert such a privilege, they shall

2   provide the United States with the following: (1) the title of

3   the document, record, or information; (2) the date of the

4   document, record, or information; (3) the name and title of the

5   author of the document, record, or information; (4) the name and

6   title of each addressee and recipient; (5) a description of the

7   subject of the document, record, or information; and (6) the

8   privilege asserted by Defendants. However, no documents, reports

9   or other information required to be created or generated pursuant

10  to the Consent Decree shall be withheld on the grounds that they

11  are privileged.

12      26.  A.   Until termination of this Consent Decree, the

13  United States and its authorized representatives and contractors

14  shall have authority at reasonable times to enter the Defendants'

15  premises to:

16          1.   Monitor the activities related to this

17          Consent Decree;

18          2.   Verify any data or information submitted to

19          the United States relating to compliance with this

20          Consent Decree;

21          3.   Obtain samples in the Restoration and

22          Preservation Area relating to compliance with this

23          Consent Decree;

24          4.   Inspect and evaluate Defendants' compliance

25          with the Restoration and Preservation Plan under this

26          Consent Decree; and

27          5.   Inspect and review any records required to be

28          kept under this Consent Decree.

- 13 -

1          B.   This provision of this Consent Decree is in

2    addition to, and in no way limits or otherwise affects, the

3    statutory authorities of the United States to conduct

4    inspections, to require monitoring, and to obtain information

5    from the Defendants as authorized by law.

6    

**VI. <u>DISPUTE RESOLUTION</u>**

7        27.  Any dispute that arises with respect to the meaning or

8    requirements of this Consent Decree shall be, in the first

9    instance, the subject of informal negotiations between the United

10   States and Defendants affected by the dispute to attempt to

11   resolve such dispute.  The period for informal negotiations shall

12   not extend beyond thirty (30) days beginning with written notice

13   by one party to the other affected party or parties that a

14   dispute exists, unless agreed to in writing by those parties.  If

15   such dispute between the United States and Defendants cannot be

16   resolved by informal negotiations, then the position advanced by

17   the United States shall be considered binding unless, within

18   thirty (30) days after the end of the informal negotiations

19   period, the Defendants file a motion with the Court seeking

20   resolution of the dispute.  Such motion shall set forth the

21   nature of the dispute and a proposal for its resolution.  The

22   United States shall have thirty (30) days to respond to the

23   motion and propose an alternate resolution.  In resolving any

24   such dispute, the Defendants shall bear the burden of proving by

25   a preponderance of the evidence that the United States' position

26   is not in accordance with the terms and conditions of this

27   Consent Decree.

28       28.  If the United States believes that a dispute would pose

- 14 -

or increase a threat of imminent and substantial endangerment to the environment or to the public health or welfare, it may move the Court for a resolution of the dispute prior to the expiration of the thirty (30) day period for informal negotiations.  Such motion shall state in particular all factual bases upon which it is based and the proposed resolution.  The Defendants shall have fourteen (14) days to respond to the motion and propose an alternate resolution, unless that time is extended by the Court. In any such motion, the United States shall have the burden of proving a need for expedited dispute resolution; the Defendants shall bear the burden of proving by a preponderance of the evidence that the United States' position is not in accordance with the terms and conditions of this Consent Decree.

29.  The filing of a motion asking the Court to resolve a dispute shall not extend or postpone any obligation of Defendants under this Consent Decree, except as provided in Paragraph 37 below regarding payment of Stipulated Penalties.

## VII. **FORCE MAJEURE**

30.  Defendants shall perform the actions required under this Consent Decree within the time limits set forth or approved herein, unless the performance is prevented or delayed solely by a Force Majeure event.  A Force Majeure event is defined as any event arising from causes beyond the control of Defendants, including their employees, agents, consultants and contractors, which could not be overcome by due diligence and which delays or prevents the performance of an action required by this Consent Decree within the specified time period.  A Force Majeure event does not include, _inter alia_, increased costs of performance,

- 15 -

changed economic circumstances, changed labor relations, normal
precipitation or climate events, changed circumstances arising
out of the sale, lease or other transfer or conveyance of title
or ownership or possession of the Site, or failure to obtain
federal, state or local permits.

31.   If Defendants believe that a Force Majeure event has
affected Defendants' ability to perform any action required under
this Consent Decree, Defendants shall notify EPA and the United
States Department of Justice in writing, at the addresses
specified in Section IX below,  within seven (7) calendar days
after the event.   Such notice shall include a discussion of the
following:

| | | |
|---|---|---|
| A. | what action has been affected; |
| B. | the specific cause(s) of the delay; |
| C. | the length or estimated duration of the delay; and |
| D. | any measures taken or planned by the Defendants to prevent or minimize the delay and a schedule for the implementation of such measures. |

Defendants may also provide to the United States any additional
information that they deem appropriate to support their
conclusion that a Force Majeure event has affected their ability
to perform an action required under this Consent Decree.   Failure
to provide timely and complete notification to the United States
shall constitute a waiver of any claim of Force Majeure as to the
event in question.

32.   If the United States determines that the conditions
constitute a Force Majeure event, then the deadline for the
affected action shall be extended by the amount of time of the

- 16 -

1  delay caused by the Force Majeure event.  Defendants shall

2  coordinate with EPA to determine when to begin or resume the

3  obligations that had been affected by the Force Majeure event.

4       33.  If the parties are unable to agree that the conditions

5  constitute a Force Majeure event, or that the length of time for

6  fulfilling the provision of the Consent Decree at issue should be

7  extended, any party may seek a resolution of the dispute under

8  the procedures in Section XIII below.

9       34.  Defendants shall bear the burden of proving the

10  existence of a Force Majeure event as defined in Paragraph 30

11  above and  the number of days of delay in compliance that were

12  caused by such Force Majeure event.

13                    **VIII. <u>STIPULATED PENALTIES</u>**

14       35.  After entry of this Consent Decree, if Defendants fail

15  to timely fulfill any requirement of the Consent Decree

16  (including Appendix A), the Defendants shall pay a Stipulated

17  Penalty to the United States for each violation of each

18  requirement of this Consent Decree as follows:

19              A.   $1000.00 per day for Day 1 up to and including Day
                     30 of non-compliance;
20
                B.   $2,000.00 per day for Day 31 up to and including
21                   Day 60 of non-compliance;
22
                C.   $3,000.00 per day for Day 61 and beyond of non-
23                   compliance.
24  Such payments shall be made on demand by the United States and in
25  accordance with this Consent Decree.
26       36.  Any disputes concerning the amount of Stipulated
27  Penalties, or the underlying violation that gives rise to the
28  Stipulated Penalties, that cannot be resolved by the parties
   pursuant to the Dispute Resolution provisions in Section VI above

                                - 17 -

and/or the Force Majeure provisions in Section VII above shall be resolved upon motion to this Court as provided in Section VI above.

37.   The filing of a motion requesting that the Court resolve a dispute shall stay Defendants' obligation to pay any Stipulated Penalties with respect to the disputed matter pending resolution of the dispute.   Notwithstanding the stay of payment, Stipulated Penalties shall continue to accrue from the first day of any failure or refusal to comply with any term or condition of this Consent Decree.   Unless otherwise provided for in Paragraph 38 below, in the event that Defendants do not prevail on the disputed issue, Stipulated Penalties shall be paid by Defendants as provided in this Section.

38.   To the extent Defendants demonstrate to the Court that a delay or other non-compliance was due to a Force Majeure event as defined in Paragraph 30 above or otherwise prevail on the disputed issue, no Stipulated Penalties for such delay or alleged non-compliance shall be due.

39.   In the event that a Stipulated Penalty payment is applicable and not paid on time as provided for in this Consent Decree, interest on due but unpaid amounts will be charged in accordance with the statutory judgment interest rate provided for in 28 U.S.C. § 1961. The interest shall be computed daily from the date the payment is due until the date the payment is made. The interest shall be compounded annually.

40.   Defendants shall make any payment of a Stipulated Penalty by FedWire Electronic Funds Transfer ("EFT" or wire transfer) to the U.S. Department of Justice account in accordance

1   with current electronic funds transfer procedures, referencing

2   U.S.A.O. file number 2000V01872, EPA Region IX and the DOJ case

3   number 90-5-1-1-05744.   Payment shall be made in accordance with

4   instructions provided to the Defendants by the Financial

5   Litigation Unit of the United States Attorney's Office for the

6   Central District of California.   Any payments received by the

7   Department of Justice after 4:00 P.M. (Eastern Time) will be

8   credited on the next business day.   Further, upon payment of any

9   Stipulated Penalties, Defendants shall notify EPA and the United

10  States Department of Justice in writing, at the addresses

11  specified in Section IX below.

12                        **IX. <u>ADDRESSES</u>**

13      41.   All notices and communications required under this

14  Consent Decree shall be made to the parties through each of the

15  following persons and addresses:

16          A.    <u>TO EPA</u>:

17                Julia Jackson
                  Assistant Regional Counsel
18                United States Environmental Protection Agency
                  Region IX, ORC-2
19                75 Hawthorne Street
                  San Francisco, CA  94105
20
                  Robert Leidy
21                Wetlands Regulatory Office
                  United States Environmental Protection Agency
22                Region IX, WTR-8
                  75 Hawthorne Street
23                San Francisco, CA  94105

24          B.    <u>TO THE UNITED STATES DEPARTMENT OF JUSTICE</u>:

25                Lily N. Chinn
                  Andrew J. Doyle
26                Paul D. Tanaka
                  Environmental Defense Section
27                Environment and Natural Resources Division
                  U.S. Department of Justice
28                P.O. Box 23986
                  Washington, D.C. 20026-3986

                            - 19 -

C.   TO DEFENDANTS:

Barry M. Hartman
Kirkpatrick & Lockhart Nicholson Graham
1800 Massachusetts Ave. N.W.
Washington, DC 20036-1221

Suzanne Henry
Kirkpatrick & Lockhart Nicholson Graham
10100 Santa Monica Boulevard
Seventh Floor
Los Angeles, CA 90067

Peter Adam
Adam Bros. Farming, Inc.
P.O. Box 5987
Santa Maria, CA  93456

Richard Adam
Iceberg Holdings, L.P.
c/o Chern & Brenneman
625 E Chapel St
Santa Maria, CA 93454-4521

## X. COSTS OF SUIT

42.   Each party to this Consent Decree shall bear its own costs and attorneys' fees in this action.

## XI. PUBLIC COMMENT

43.   The parties acknowledge that after the lodging and before the entry of this Consent Decree, final approval by the United States is subject to the requirements of 28 C.F.R. § 50.7, which provides for public notice and comment.  The United States reserves the right to withhold or withdraw its consent to the entry of this Consent Decree if the comments received disclose facts which lead the United States to conclude that the proposed judgment is inappropriate, improper, or inadequate.  The Defendants agree not to withdraw from, oppose entry of, or to challenge any provision of this Consent Decree, unless the United States has notified the Defendants in writing that it no longer supports entry of the Consent Decree or seeks any changes in the

1  Consent Decree.

2  ## XII. CONTINUING JURISDICTION OF THE COURT

3      44.   This Court shall retain jurisdiction over this action

4  in order to enforce or modify the Consent Decree consistent with

5  applicable law or to resolve all disputes arising hereunder as

6  may be necessary or appropriate for construction or execution of

7  this Consent Decree.   During the pendency of the Consent Decree,

8  any party may apply to the Court for any relief necessary to

9  construe or effectuate the Consent Decree.

10  ## XIII. MODIFICATION

11      45.   Upon its entry by the Court, this Consent Decree shall

12  have the force and effect of a final judgment.   Any modification

13  of this Consent Decree shall be in writing, and shall not take

14  effect unless signed by both the United States and the Defendants

15  and approved by the Court.

16  ## XIV. TERMINATION

17      46.   This Consent Decree may be terminated by either of the

18  following:

19      A.   Defendants and the United States may at any time

20  make a joint motion to the Court for termination of this Consent

21  Decree or any portion of it; or

22      B.   Defendants may make a unilateral motion to the Court

23  to terminate this Consent Decree upon the following conditions:

24          1.   Defendants have obtained and maintained

25          compliance with all provisions of this Consent Decree

26          and the CWA for twelve (12) consecutive months;

27          2.   Defendants have paid all penalties and other

28          monetary obligations hereunder and no penalties or

- 21 -



other monetary obligations are outstanding or owed to the United States; and

    3.   Defendants have certified compliance with subparagraphs 1 and 2 above to the Court and the United States in the unilateral motion.

If, within forty-five (45) days of receiving such unilateral motion from the Defendants, the United States has not contested in writing that such compliance has been achieved, the motion to terminate shall be granted. If the United States disputes Defendants' full compliance, this Consent Decree shall remain in effect pending resolution of the dispute by the parties or the Court.

    47.   Notwithstanding the termination of this Consent Decree, conditions applicable to the Restoration and Preservation Area set forth in Appendix A shall continue in perpetuity and shall run with the land.

## XV. DISMISSAL OF ACTION IN COURT OF FEDERAL CLAIMS.

    48.  Within 30 days of entry of this Consent Decree, Defendants shall dismiss with prejudice any claims they brought or could have brought in <u>Adam Bros. Farming, Inc. v. United States</u>, Court of Federal Claims, No. 00-522L, including any claims they may have had for attorneys' fees or costs in connection with that action.

IT IS SO ORDERED.

Dated and entered this _7th_ day of _April_____, 2005.

_Christina A. Snyder_

United States District Judge
Hon. Christina A. Snyder

- 22 -

1   FOR THE UNITED STATES:

2
    THOMAS L. SANSONETTI
3   Assistant Attorney General
    Environment and Natural Resources Division

4

5

6   LILY N. CHINN
    ANDREW J. DOYLE
7   PAUL D. TANAKA
    United States Department of Justice
8   Environment and Natural Resources Division
    Environmental Defense Section
9   P.O. Box 23986
    Washington, D.C. 20026-3986
10  Telephone: (202) 514-2219
    Facsimile: (202) 514-8865
11

12

13  Dated: ___Feb. 23, 2005___

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 23 -

1

2

3    _____
     THOMAS V. SKINNER

4    Acting Assistant Administrator for
       Enforcement and Compliance Assurance

5    U.S. Environmental Protection Agency
     Washington, D.C. 20460

6

7

8    Dated:  2/23/05  _____

9

10

11

12

13   _____
     WAYNE NASTRI

14   Regional Administrator
     U.S. Environmental Protection Agency Region IX

15   75 Hawthorne St.
     San Francisco, CA  94105

16

17

18   Dated: _____

19

20

21

22

23

24

25

26

27

28

- 24 -

1

2

3
_____
THOMAS V. SKINNER
4  Acting Assistant Administrator for
     Enforcement and Compliance Assurance
5  U.S. Environmental Protection Agency
   Washington, D.C. 20460
6

7

8  Dated: _____

9

10

11

12

13
_____
WAYNE NASTRI
14  Regional Administrator
   U.S. Environmental Protection Agency Region IX
15  75 Hawthorne St.
   San Francisco, CA  94105
16

17

18  Dated: ___2/23/2005_____

19

20

21

22

23

24

25

26

27

28

- 24 -

1  FOR DEFENDANTS:

2

3  _____
   BARRY M. HARTMAN
   SUZANNE HENRY
4  Kirkpatrick & Lockhart Nicholson Graham, LLP
   1800 Massachusetts Ave. N.W.
5  Washington, DC 20036-1221
   Telephone: (202) 778-9000
6  Facsimile: (202) 778-9100

7  Dated: _Feb. 23, 2005_____

8

9

10 ADAM BROS. FARMING, INC. and PETER ADAM, Individually

11 By: _____

12     PETER ADAM, Vice-President

13 Dated: _Feb. 22, 2005_____

14

15

16 ICEBERG HOLDINGS, LP and RICHARD ADAM, Individually

17 By: _____

18     RICHARD ADAM, General Partner

19 Dated: _2-22-05_____

20

21 By: _____

22     KIERAN ADAM

23 Dated: _2/22/05_____

24

25 By: _____

26     DOMINIC ADAM

27 Dated: _2-22-05_____

28

                                    - 25 -



**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**OFFICE OF THE CLERK**

# THE EXHIBIT(S) AND/OR ATTACHMENT(S) TO THIS DOCUMENT ARE AVAILABLE IN "THE RECORDS SECTION" OF THE CLERK'S OFFICE.

Optical Scanning - October 23, 2001